**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FREDERICK CONAWAY and TINA QAMAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CSC SERVICEWORKS, INC.,<br><br>Defendant. | Case No.: 2:24-cv-05719-JMA-ARL<br><br>NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Frederick Conaway and Tina Qamar ("Plaintiffs"), on behalf of themselves and the Settlement Class, move for an order granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs respectfully request that the Court:

(1) grant preliminary approval of the Parties' Class Action Settlement Agreement;

(2) grant conditional certification of the Settlement Class;

(3) appoint Class Counsel;

(4) appoint the Class Representatives;

(5) appoint the Settlement Administrator;

(6) approve the Class Notice; and

(7) set a hearing date for final settlement approval.

Plaintiffs base their Motion on this Notice, the Memorandum of Law filed in support thereof, the Settlement Agreement and Release ("Settlement Agreement") and all Exhibits thereto, the Declaration of Scott Edward Cole, all other records and papers on file in this action,

any oral argument on the Motion and all other matters properly before the Court.

Dated: April 25, 2025

By: */s/ Jared R. Cooper*
Jared R. Cooper
**ROBINSON YABLON COOPER & BONFANTE, LLP**
232 Madison Ave., Suite 909
New York, NY 10016
Telephone: (212) 725-8566
Facsimile: (646) 766-8268
Email: jared@rycbinjury.com

Scott Edward Cole
(*pro hac vice* pending)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: sec@colevannote.com

Vicky J. Maniatis
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: (212) 594-5300
Email: vmaniatis@milberg.com
Email: dlietz@milberg.com

A. Brooke Murphy
(admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
Email: abm@murphylegalfirm.com

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FREDERICK CONAWAY and TINA QAMAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CSC SERVICEWORKS, INC.,<br><br>Defendant. | Case No.: 2:24-cv-05719-JMA-ARL<br><br>MEMORANDA OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. PROCEDURAL HISTORY .......... 2

III. THE SETTLEMENT TERMS .......... 4

A. Proposed Settlement Class Definition .......... 4

B. Settlement Benefits .......... 4

C. Class Notice and Settlement Administration .......... 5

D. Attorneys' Fees and Representative Plaintiffs' Service Awards .......... 5

E. Dismissal and Release of Claims .......... 6

IV. ARGUMENT .......... 6

A. The Settlement Satisfies Rule 23(a) .......... 7

B. The Proposed Class is Sufficiently Numerous .......... 7

C. The Settlement Class Satisfies the Commonality Requirement .......... 7

D. Plaintiffs' Claims are Typical to Those of the Class .......... 8

E. Plaintiffs Will Adequately Protect the Interests of the Class .......... 9

F. The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes .......... 9

G. Common Questions Predominate .......... 10

H. Class Action is Superior to Other Methods of Adjudication .......... 10

I. The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e) .......... 11

J. The Settlement is Procedurally Fair ........ 12

K. The Settlement Class has been vigorously represented ........ 13

L. The Settlement was negotiated at arm's length after the exchange of informal discovery ........ 13

M. The Settlement provides meaningful relief to the class ........ 15

N. The Settlement treats Settlement Class Members equitably. ........ 17

O. The remaining factors weigh in favor of approval. ........ 18

P. The Court Should Approve the Proposed Notice Program ........ 20

Q. Appointment of Settlement Class Counsel ........ 21

V. SETTLEMENT TIMELINE ........ 22

VI. CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 6, 10

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......... 12, 17

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .......... 13

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) .......... 11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......... 20

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) .......... 8

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 186 (W.D.N.Y. 2005) .......... 18

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .......... 18

*Hicks v. Morgan Stanley & Co.*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......... 15

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......... 19

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......... 15

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .......... 17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......... 19

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) .......... 15

*In re Nassau Cty. Strip Search Cases*,

461 F.3d 219 (2d Cir. 2006) .......... 10

*In re Nissan Radiator/Transmission Cooler Litig.*,
No. 10-cv-07493, 2013 WL 4080946
(S.D.N.Y. May 30, 2013) .......... 8

*In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276
(E.D. Mich. 2017) .......... 19

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997). .......... 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .......... 15, 19

*In re Sinus Buster Products Consumer Litig.*,
No. 12-cv-02429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .......... 17

*In re Synchrony Fin. Sec. Litig.*,
No. 18-cv-01818, 2023 WL 4992933 (D. Conn. Aug. 4, 2023) .......... 12

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .......... 8

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008). .......... 17

*Lopez v. Setauket Car Wash & Detail Ctr.*,
314 F.R.D. 26 (E.D.N.Y. Jan. 5, 2016) .......... 7

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) .......... 7

*Martens v. Smith Barney Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) .......... 9

*Matheson v. T-Bone Rest., LLC*,
No. 09-cv-04214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .......... 14

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08-cv-08713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .......... 14

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023). .......... 12

*Phillips Petroleum Co. v. Shutts*,

472 U.S. 797 (1985) .......... 20

*Robidoux v. Celani*, 987 F.2d 931
(2d Cir. 1993) .......... 8

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015 .......... 7

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) .......... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .......... 10

*Viafara v. MCIZ Corp.*, No. 12-cv-07452,
2014 WL 1777438 (S.D.N.Y. May 1, 2014) .......... 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 6

**Other Authorities**

Manual for Complex Litigation (Fourth) .......... 6, 7

**Rules**

Fed. R. Civ. P. 23 (c) .......... 20

Fed. R. Civ. P. 23(a) .......... 7, 8

Fed. R. Civ. P. 23(b) .......... 9, 10

Fed. R. Civ. P. 23(e) .......... passim

**Treatises**

*Newberg & Rubenstein on Class Actions* (6th ed. 2022 ) .......... 6

## I. INTRODUCTION

On February 4, 2024, Defendant CSC Serviceworks, Inc. ("Defendant" or "CSC") experienced unusual activity on its network (the "Data Security Incident"). CSC's subsequent investigation determined that an unauthorized third party gained access to CSC's network from September 23, 2023, through February 4, 2024, and accessed the Personally Identifiable Information ("PII") of 35,340 individuals, including Representative Plaintiffs Frederick Conaway and Tina Qamar. Consolidated Complaint ("CMP") ¶ 6 (Doc. 14); Declaration of Scott Edward Cole ("Cole Decl.") ¶ 3. The PII potentially impacted by the Data Security Incident includes names, dates of birth, Social Security numbers, contact information, driver's license numbers, financial account information, health insurance information and medical information. *Id.*

On or around August 9, 2024, Defendant notified Plaintiffs and Class Members of the Data Security Incident. Thus, for six months, Plaintiffs and Class Members were completely unaware that their PII was impacted, which meant they could not take action to protect and secure this sensitive data. Shortly after receiving notice of the Data Security Incident, Plaintiffs filed suit seeking damages for lost time, the threat of future harm, out-of-pocket expenses and other injuries related to this event. CMP ¶¶ 68-69; Cole Decl. ¶¶ 4-5.

After months of litigation and contentious settlement negotiations, the Parties reached a Settlement. This Motion seeks preliminary approval of the Settlement Agreement ("SA"). A copy of the SA is attached as **Exhibit A** to the Cole Declaration. As part of the Settlement, CSC will compensate each Class Member who submits a valid Claim up to $5,000 for Out-of-Pocket Losses related to the Data Security Incident. SA ¶ 52b. CSC will also compensate Class Members for lost time spent responding to the Data Security Incident at a rate of twenty-five (25) dollars an hour for up to four (4) hours. *Id.* Defendant will also offer all Settlement Class Members two-

years of one-bureau credit monitoring with $1,000,000 in identity theft/fraud insurance. *Id*. Further, CSC agrees to implement and/or to keep in place reasonable enhanced security safeguards through December 31, 2027. These security enhancements are designed to help prevent a future data incident. SA ¶ 55. Finally, Defendant will pay Class Counsel's Attorneys' Fees and Costs, Service Awards and Settlement Administration Costs, in an amount not to exceed $225,000 (subject to approval of the Court), *independently* of payments to Class Members.

The Settlement's monetary and nonmonetary benefits represent a strong recovery for Plaintiffs and Class Members, who otherwise would have faced the significant risks, costs and delays of continued litigation. Data breach cases are highly risky matters that face challenges at every step of the litigation, including at the pleading stage. That was true here, as Defendant sought a pre-Motion conference to dismiss Plaintiffs' claims and the Parties had fully briefed these issues before they reached a Settlement. On the whole, the Settlement is fair, reasonable, and adequate and is in the best interest of Plaintiffs and the proposed Settlement Class.

## II. PROCEDURAL HISTORY

On August 15, 2024, Plaintiff Frederick Conaway filed a Class Action Complaint against Defendant in this Court. Plaintiff Tina Qamar filed a similar claim on August 19, 2024. On October 21, 2024, the Court granted Plaintiffs' Motion to Consolidate. (Doc. 9) Scott Edward Cole of Cole & Van Note, David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and A. Brooke Murphy of Murphy Law Firm were appointed as Interim Class Counsel. (Doc. 9). Plaintiffs filed a Consolidated Complaint on November 21, 2024. (Doc. 14). The Consolidated Complaint asserts claims for (i) Negligence, (ii) Breach of Implied Contract and (iii) Unjust Enrichment. CMP ¶¶ 162-208.

Proposed Class Counsel conducted a thorough investigation into the facts of this Action,

including on issues such as the number of Class Members, the nature of the PII affected and Defendant's response to the Data Security Incident. The Parties engaged in extensive informal discovery to perform an analysis and valuation of all claims. The Parties exchanged information and documents to investigate the veracity, strength and scope of the claims, and to allow analysis and evaluation of the claims and Defendant's defenses thereto. Cole Decl. ¶ 9. Representative Plaintiffs vigorously prosecuted this case, and Defendant vigorously contested it. Class Counsel believes the documents exchanged and analyzed, as well as the Parties' ongoing settlement discussions, which lasted for months and only concluded shortly before a pre-Motion conference on Defendant's proposed Motion to Dismiss, are sufficient for the Parties to make an informed decision about a fair resolution of this Action. *Id.*

After Defendant sought to file a Motion to Dismiss, the Parties engaged in thorough pre-Motion briefing. On January 13, 2025, Class Counsel filed a detailed legal analysis on the merits of the various claims in this Action in response to Defendant's pre-Motion letter. Prior to the February 19, 2025, pre-Motion conference, the Parties' settlement negotiations resulted in a settlement in principle. (Doc. No. 15-17). After reaching a settlement in principle, the Parties continued to negotiate various settlement terms over the following months. This process culminated in the Settlement Agreement accompanying this Motion. No side agreements were made (i.e., the Settlement Agreement is the only agreement between the Parties). Cole Decl. ¶ 10. The Parties diligently worked on a Notice Plan, Notices, Claim Forms and other exhibits alongside the long-form settlement agreement until filing this Motion for Preliminary Approval. Many redline drafts were exchanged. *Id.* at ¶ 11. The formal Settlement Agreement was finalized and signed as of April 24, 2025. *Id.* at ¶ 12.

## III. THE SETTLEMENT TERMS

### A. Proposed Settlement Class Definition

The Parties agree to the certification of the following Settlement Class (subject to the exclusions outlined below):

> All persons residing in the United States whose PII was compromised in the Data Security Incident announced by CSC in or around August 2024.

SA ¶ 48. Excluded from the Class are: (1) any entity in which CSC has a controlling interest and (2) the affiliates, legal representatives, attorneys, successors, heirs and assigns of CSC. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. *Id.*

### B. Settlement Benefits

Defendant has agreed to pay up to $5,000 to each Settlement Class Member who submits a valid claim with supporting documentation, for the following unreimbursed losses:

i. Up to four hours of lost time, at $25.00/hour of time spent mitigating the effects of the Incident. Class members may submit claims for up to 4 hours of lost time by submitting an attestation, made under penalty of perjury, that they spent the claimed time responding to issues raised by the Incident;

ii. Unreimbursed out-of-pocket expenses incurred as a result of the Incident, including bank fees, long distance telephone charges, cellular telephone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage or gasoline for local travel; and

iii. Fees for credit reports, credit monitoring or other identity theft insurance products purchased between September 23, 2023, and the date of the close of the Claims Period.

SA ¶ 52a.

In addition to the above benefits, CSC will also offer all Settlement Class Members two-years of credit monitoring with $1,000,000 in identity theft/fraud insurance. SA ¶ 52b. Finally,

CSC agrees to implement and/or to keep in place reasonable enhanced security safeguards through December 31, 2027. These security enhancements are designed to help prevent a future data incident. CSC agrees to pay for the costs associated with these business practice commitments separate and apart from other Settlement benefits. SA ¶¶ 55-56.

**C. Class Notice and Settlement Administration**

The Parties request the Court appoint Atticus Administration, LLC ("Atticus") to serve as the Settlement Administrator. Atticus has a trusted and proven track record of supporting thousands of class action administrations. CSC will pay the entirety of the settlement administration fees, including without limitation the actual cost of notice to the class and claims administration, separate and apart from other Settlement benefits. SA ¶ 52(d).

As described in the Settlement Agreement, the notice program shall include a Long Form Notice (**Exhibit A**), a Short Form Notice that will be sent to Class Members via US Mail (**Exhibit B**), a Claim Form (**Exhibit C**) and the establishment of a Settlement Website. S.A. ¶¶ 28, 42. The Settlement Website will provide Settlement Class Members with a copy of the Complaint, Settlement Agreement, the Long Form Notice and Claim Form. The Settlement Website will also inform Settlement Class Members of their rights, important Court dates, the deadlines for Settlement Class Members to opt-out, object or file a Claim and related information. SA ¶ 42.

CSC shall provide Atticus with the names and last known mailing addresses of potential Settlement Class Members within fourteen (14) days after entry of the Preliminary Approval Order. SA ¶ 64. The Settlement Administrator will commence the notice program no later than 30 days after entry of the Preliminary Approval Order. SA ¶ 29.

**D. Attorneys' Fees and Representative Plaintiffs' Service Awards**

Class Counsel will move the Court for an award of Attorneys' Fees and Costs in a combined amount not to exceed $225,000. Attorneys' Fees and Costs awarded by the Court

shall be provided *separate and apart* from the Settlement Payment. Attorneys' fees were not discussed until after the primary terms of the Settlement were negotiated. $225,000. SA ¶ 78.

Class Counsel shall also seek Service Awards of $2,500 for each Representative Plaintiff, subject to Court approval. This amount was also discussed only after the primary terms of the settlement were negotiated. SA ¶ 80.

### E. Dismissal and Release of Claims

In exchange for the proposed Settlement consideration, Plaintiffs and Settlement Class Members will release and discharge all claims and causes of action pleaded, or that could have been pleaded, that are related to the Data Security Incident. SA ¶ 57.

## IV. ARGUMENT

The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the Parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. However, when a Court evaluates certification of a settlement-only class action, the Court's evaluation is somewhat different from the inquiry required for a case proceeding to trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiffs seek certification of a Settlement Class consisting of 35,340 individuals. For the reasons set forth below, the Court should certify the Settlement Class

for settlement purposes and preliminarily approve the Settlement.

**A. The Settlement Satisfies Rule 23(a)**

Before assessing the Parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 28 (E.D.N.Y. Jan. 5, 2016).

**B. The Proposed Class is Sufficiently Numerous**

Under Rule 23(a)(1), Plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "There is no magic minimum number that will breathe life into a class, but generally, courts will find a class sufficiently numerous when it comprises forty or more members." *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001) (internal citations omitted). At over 35,000 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement.

**C. The Settlement Class Satisfies the Commonality Requirement**

The Settlement Class satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015). Here, as in most data breach cases, "[t]hese common

issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, *inter alia*, whether CSC engaged in the wrongful conduct alleged, whether Class Members' PII was compromised in the Data Security Incident, whether CSC owed a duty of care to Plaintiffs and Class Members and whether CSC breached a duty of care to Class Members. Accordingly, Plaintiffs have met the commonality requirement of Rule 23(a).

**D. Plaintiffs' Claims are Typical to Those of the Class**

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PII, are "reasonably coextensive with those of the absent class members." Fed. R. Civ. P. 23(a)(3). That requirement is satisfied by showing that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-07493, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *see also Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding."). Here, Plaintiffs, like the Settlement Class as a whole, generally allege their PII was impacted by Defendant's inadequate data security measures. To prove these allegations, it is likely that all Plaintiffs will rely on the same types and forms of evidence to prove their claims because the event underlying all of their injuries is the same—the Data Security Incident.

**E. Plaintiffs Will Adequately Protect the Interests of the Class**

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4) "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal citation omitted).

Here, Proposed Class Counsel are not aware of any antagonism or conflict of interest between Representative Plaintiffs and the putative class. In fact, Representative Plaintiffs have been involved in this case and have been in routine contact with Proposed Class Counsel. Additionally, Representative Plaintiffs assisted with the prosecution efforts that included frequent emails and telephone calls with counsel, production of documents and communications surrounding settlement. Cole Decl. ¶ 14. Further, proposed Class Counsel have decades of combined experience handling complex class action cases including over hundreds of breach class actions in state and federal courts around the United States. *Id*. ¶¶ 16, 23-26. Thus, Plaintiffs satisfy the requirement of adequacy.

**F. The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes**

In addition to meeting the conditions imposed by Rule 23(a), the Parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

**G. Common Questions Predominate**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). "[A] plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted). In the settlement context, the potential for trial manageability problems posed by individualized issues falls away because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Plaintiffs' claims depend on whether CSC used reasonable data security measures to protect consumers' PII. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ….'") (citation omitted).

**H. Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

First, adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. There are thousands of Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress.

> A class action is the superior method for the fair and efficient adjudication of this controversy. The potential class members are both significant in number and geographically dispersed. The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions. To force each [plaintiff] to litigate separately would risk disparate results among those seeking redress, would encourage a race to judgment given the limited funds available to fund recovery here, would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001). Second, this forum is home to the Defendant, and a large proportion of the class members.

Finally, because the Court is certifying the Settlement Class only for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620. The resolution of tens of thousands of claims in one action is far superior to individual lawsuits, and such a resolution promotes consistency and efficiency of adjudication. For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

## I. The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e)

Fed. R. Civ. P. 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A) the class representatives and Plaintiffs' Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

When applying the Rule 23(e)(2) factors, courts in this Circuit evaluate both the *substantive* terms of the settlement and whether it is *procedurally* fair—*i.e.*, "whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 18-cv-01818, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (cleaned up). That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which overlap with the Rule 23(e)(2) factors.[1] *See, e.g.*, *Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

**J. The Settlement is Procedurally Fair**

The Court first must consider procedural fairness, which is comprised of two considerations: (i) whether "the class representatives and class counsel have adequately

[1] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendant to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

represented the class" and (ii) whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (the third *Grinnell* factor—*i.e.*, the stage of the proceedings and the amount of discovery completed—overlaps with Rule 23(e)(2)(B)'s "negotiated at arms-length" factor).

**a. The Settlement Class has been vigorously represented**

Adequacy of representation requires consideration of whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).Plaintiffs' interests are aligned with the Settlement Class. Each Plaintiff is a current or former employee of Defendant (or a beneficiary of an employee) whose Private Information was compromised as a result of the Data Security Incident.

Defendant's alleged failure to implement reasonable data security measures impacted the privacy rights of all Class Members, including Plaintiffs, and as a result, Plaintiffs and the Class seek the same relief from the same injury. Similarly, Class Counsel engaged in a thorough investigation and significant informal discovery prior to settlement, which informed their understanding of the case's merits. Cole Decl. ¶ 9. Counsel is also eminently qualified to conduct this litigation based on past experience in similar cases. *Id.* at ¶¶ 23-26.

**b. The Settlement was negotiated at arm's length after the exchange of informal discovery**

This Settlement bears all of the hallmarks of arm's length negotiations. First, the negotiations were hard fought, at times contentious, lasted for months and only concluded shortly before a pre-motion hearing on Defendant's proposed Motion to Dismiss. Second, prior to negotiating the settlement, Plaintiffs and Class Counsel were well-informed about the

strengths and weaknesses of their claims against Defendant. Cole Decl. ¶¶ 9-19. Class Counsel's negotiating strategy benefited from the information obtained from Defendant's public disclosures, Class Counsel's independent investigation and the hard bargaining that occurred up to, and after, the briefing on Defendant's potential motion to dismiss. *Id.* ¶ 7. Further, Class Counsel sought and received pre-mediation informal discovery from Defendant on a number of issues pertinent to the litigation. *Id*. at ¶¶ 6, 9.

Lastly, skilled and experienced counsel engaged in adversarial negotiations for each of the Parties. Defendant is represented by counsel with extensive experience in privacy and data security law, and with complex class litigation generally. Overall, the Settlement negotiations resulted in an excellent settlement for the Class. *Id.* at ¶ 10. When viewed in their totality, the circumstances fully support the conclusion that the settlement is procedurally fair. *Id.* at ¶ 20.

Accordingly, Plaintiffs' counsel—attorneys with considerable experience in assessing the strengths and weaknesses of data breach cases—are well-informed about the strengths and risks of the claims, as well as their value. *Id.* at. ¶¶ 9, 16, 23-26.

This thoroughness and consistently adversarial posture favor preliminary approval. *See, e.g., McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-08713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (finding that the "efficient informal exchange of information" sufficient to recommend settlement approval); *Matheson v. T-Bone Rest., LLC*, No. 09-cv-04214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (holding that informal discovery allowed plaintiffs to "weigh the strengths and weaknesses of their claims"). As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair.

**K. The Settlement provides meaningful relief to the class.**

The Court should find that the Settlement's benefits are sufficiently robust to merit notice to Settlement Class Members. Every Settlement Class Member who submits a valid claim will likely be made whole under the Settlement.

Such relief is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Settlement Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. Fed. R. Civ. P. 23(e)(2)(i)–(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors one, four through six, eight, and nine).

***Risks of further litigation***. Continued litigation of this case would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial and appeal"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (Rule 23(e)(2)(C)'s "risks" factor overlaps with *Grinnell* factors one, four, five, and six). Indeed, the Settlement resolves a complex class action—previously, two separate class actions—that would continue to be costly to litigate through trial. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (settlement avoids costs associated with "inherently complex" class actions); *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (similar).

Litigation inherently involves risk. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Plaintiffs likely would need to retain expensive forensics experts and litigate multiple *Daubert* motions. Certifying a class, surviving summary judgment and proving liability at trial likely would require exhaustive briefing and additional first- and

third-party discovery—*i.e.*, discovery from Defendant and any third-party vendors handling or contracted to handle the Private Information of the proposed Class Members. Achieving a class-wide recovery like the Settlement also would require maintaining class status through trial—a difficult and uncertain prospect. And even if the Court were to certify the Settlement Class for trial purposes (and deny efforts to decertify it thereafter), even an initially favorable result would likely be delayed and possibly defeated by any Rule 23(f) petition. Cole Decl. ¶ 17.

***Risks of establishing damages***. Other additional risks attend Plaintiffs' damages claims. *See Grinnell*, 495 F.2d at 463 (factor five). Proving *actual* damages likely would require substantial discovery into the nuances of how exfiltrated Private Information is first exfiltrated, marketed and then sold, for what purposes it is used, at what cost this comes to the Plaintiffs and at what cost these negative actions would have been deterred or prevented by the imposition of other security precautions. Cole Decl. ¶ 17. Further, Class Counsel is unaware of any data breach cases that have proceeded to trial, which means that one cannot easily value these claims based on traditional measures such as jury verdicts. Finally, even if damages are provable, Class Counsel is aware of a consumer survey which found that a typical individual in a data breach suffers less than $50 in out-of-pocket damages. The Settlement also eliminates the risks of Defendant delaying payment following a judgment or the possibility of a favorable verdict being overturned on appeal. The certainty that comes with Settlement is especially important in data breach cases because time is of the essence. The proposed Settlement will protect the Class Members' PII in ways that a later monetary judgment will not through business practice changes agreed to by CSC through the Settlement. Cole Decl. ¶¶ 17-18.

In sum, the Settlement eliminates the inherent risks attendant to all litigation while providing significant relief to the Settlement Class. These factors sharply weigh in favor of preliminary approval. Cole Decl. ¶¶ 17, 20.

***Proposed method of distributing relief.*** The proposed method of distributing relief to the class must be "effective." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties, together with Atticus Administration, LLC, have designed a comprehensive notice plan that provides the best notice to the Settlement Class practicable under the circumstances. *See* SA ¶ 29. Settlement Class Members will submit Claims using a simple, straightforward Claim Form that is designed to maximize the number of Claims made. *Id.* ¶ 54(b). Those who submit valid Claims will receive payment by electronic means or by mailed checks.

***Attorneys' Fees and Service Awards***. Plaintiffs' counsel may move for an award of reasonable Attorneys' Fees and Costs. Fed. R. Civ. P. 23(e)(2)(C)(iii). In accordance with the Settlement's terms and the schedule set by the Court, Plaintiffs' counsel will apply for an award of Attorneys' Fees and Costs not to exceed $225,000. The Settlement is not conditioned upon an award of fees. Plaintiffs will also apply for Service Awards of up to $2,500 for each Plaintiff.

***No other agreements***. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement. Cole Decl. ¶ 10.

**L. The Settlement treats Settlement Class Members equitably.**

The proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Defendant will pay each Settlement Class Member who submits a valid Claim, including a claim for reimbursement of lost time, reimbursement of out-of-pocket losses, and/or identity theft protection and credit monitoring. S.A. ¶ 52. This factor thus weighs in favor of preliminary approval.

**M. The remaining factors weigh in favor of approval.**[2]

***Grinnell factor seven***. The fact that Defendant might be able to withstand a greater judgment does not change the analysis. *See Grinnell*, 495 F.2d at 463 (factor seven). A defendant need not "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012); *see also In re Sinus Buster Products Consumer Litig.*, No. 12-cv-02429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[A]bility to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement."); *Viafara v. MCIZ Corp.*, No. 12-cv-07452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (similar). This factor is neutral.

***Grinnell factors eight and nine***. Courts also evaluate the reasonableness of a proposed settlement in light of the best possible recovery, discounted by the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

As discussed above, the Settlement's relief is substantial as it potentially makes all Class Members who submit a valid Claim completely whole. This remains true even when compared with Defendant's hypothetical exposure after trial, as this potential verdict would require Plaintiffs to litigate and prevail on all aspects of their risky claims and damages theories. Indeed,

---

[2] Because the Settlement Class has not received notice of the Settlement, consideration of *Grinnell* factor two (reaction of the class) is premature. *See Grinnell*, 495 F.2d at 463; *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

even if Plaintiffs cleared the numerous hurdles leading up to trial (at the cost of years of more litigation and, most likely, hundreds of thousands of dollars), a larger recovery is not certain. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (settlement was robust and immediate compared to some "speculative payment of a hypothetically larger amount years down the road").

Courts recognize that in the settlement approval context, a claim's hypothetical value must be discounted by risks and practical realities. Thus, the Second Circuit has noted that courts may approve settlements even where the recovery is a fraction of the amount recoverable at trial. *See, e.g., Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same); *accord, e.g., In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Here, Plaintiffs' counsel weighed the risks against the hypothetical value of their claims and, ultimately, secured a settlement that will compensate every Settlement Class Member who submits a valid Claim for their Documented Losses. Because the Settlement Agreement provides this immediate and significant relief without the attendant risks of continued litigation, *Grinnell* factors eight and nine weigh in favor of approval.

***Scope of release***. A final consideration is the scope of the Release. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 42 n.41 (although not a *Grinnell* factor, courts may look to the scope of the release in determining proposed

settlement's reasonableness). In exchange for the relief described above, Plaintiffs and the Settlement Class release all claims that have or could have been asserted against Defendant related to the Data Security Incident. The Release is limited to the exact conduct alleged in the Complaint by Plaintiffs; claims "reasonably related to the operative facts alleged in or otherwise described by the Litigation or arising out of or in any way related to the Incident and/or Released Parties' recordkeeping or data security policies and practices[.]" SA ¶ 57. The Release does not immunize Defendant from liability for future events. In sum, the Release is calculated to "achieve a comprehensive settlement that [will] prevent relitigation of settled questions at the core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). This factor weighs in favor of approval.

The Rule 23(e)(2) and *Grinnell* factors strongly support a finding that the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate."

**N. The Court Should Approve the Proposed Notice Program**

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must again be the best practicable, and reasonably calculated under all the circumstances to

apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, and after a competitive bid process, the Parties have agreed to a robust notice program to be administered by well-respected third-party class administrator Atticus Administration, LLC. The Settlement Administrator will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via mail. The costs of administering the Settlement will be paid separately from payments to Class Members. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See generally* SA § IX; Cole Decl. ¶ 11. Further, the Notice Program agreed to by the Parties, and presented to the Court for approval, gives Class Members ample time to evaluate the Settlement and exercise the right to claim the benefits available or to seek exclusion.

**O. Appointment of Settlement Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv). Cole Decl. ¶¶ 23-26. Here, proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. Plaintiffs

respectfully request that the Court appoint Scott Edward Cole of Cole & Van Note, David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and A. Brooke Murphy of Murphy Law Firm as Class Counsel.

## V. SETTLEMENT TIMELINE

| | |
|---|---|
| **Grant of Preliminary Approval** | |
| CSC provides list of Settlement Class Members to the Settlement Administrator | +14 days after Preliminary Approval |
| Long Form Notice Posted on the Settlement Website | +30 days after Preliminary Approval |
| Notice Deadline | +30 days after Preliminary Approval |
| Reminder Notice | +60 days after Notice Date |
| Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representatives' Service Award | +46 days after Notice Date |
| Objection Deadline | +60 days after Notice Date |
| Exclusion Deadline | +60 days after Notice Date |
| Claims Deadline | +90 days after Notice Date |
| Settlement Administrator Provide List of Exclusions to Class Counsel and Defendant's Counsel | +70 days after Notice Date |
| Initially Approved Claims List | +35 days after Claims Deadline |
| Initially Rejected Claims List | +35 days after Claims Deadline |
| Parties' Challenge to Any Claims | + 30 days from Initially Approved/Rejected Claims List |
| | |
| **Final Approval Hearing** | +120 days after Preliminary Approval Order (at minimum) |
| Motion for Final Approval | -14 days before Final Approval Hearing Date |
| | |
| **Final Approval** | |
| Settlement Administrator provides W-9 to CSC | +15 days after Final Approval Order |
| Effective Date | +30 days after Final Approval Order |
| Payment of Attorneys' Fees and Expenses Class Representatives' Service Award | +7 days after Effective Date or upon receipt of a W-9 and payee instructions from Class Counsel, whichever is later |
| Settlement Website Deactivation | +90 days after Effective Date |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court: (1) find it will likely

(a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the Settlement, (2) appoint Plaintiffs as Class Representatives for the Settlement Class, (3) appoint David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC, A. Brooke Murphy of Murphy Law Firm, and Scott Edward Cole of Cole & Van Note as Class Counsel, (4) direct notice to the Settlement Class and approve the form and manner thereof, (5) authorize retention of Atticus Administration, LLC as Settlement Administrator, and (6) set a schedule for final approval of the Settlement and Plaintiffs' request for attorneys' fees, expenses, and Service Awards.

Dated: April 25, 2025 By: */s/ Jared R. Cooper*

Jared R. Cooper
**ROBINSON YABLON COOPER & BONFANTE, LLP**
232 Madison Ave., Suite 909
New York, NY 10016
Telephone: (212) 725-8566
Facsimile: (646) 766-8268
Email:jared@rycbinjury.com

Scott Edward Cole
(admitted *pro hac vice*)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
sec@colevannote.com

Vicky J. Maniatis
David K. Lietz
(admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: (212) 594-5300
Email vmaniatis@milberg.com
Email dlietz@milberg.com

A. Brooke Murphy

(admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
Email: abm@murphylegalfirm.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(c) I certify that the foregoing memoranda complies with the word-count limitations. The foregoing memoranda is 6,974 words.

*/s/ Jared R. Cooper*
Jared R. Cooper

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 25, 2025, a copy of the foregoing was filed electronically with the Clerk of Court via CM/ECF. Notice of this filing will be sent by email to all Parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Jared R. Cooper*
Jared R. Cooper